

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-18-1996

# Santana v. United States

Precedential or Non-Precedential:

Docket 96-5276

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Santana v. United States" (1996). *1996 Decisions.* Paper 52.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/52

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

                    UNITED STATES COURT OF APPEALS
                       FOR THE THIRD CIRCUIT


                             96-5276


                          ERNESTO SANTANA

                               v.

                    UNITED STATES OF AMERICA

                         Ernesto Santana,

                              Appellant.



           On Appeal from the United States District Court
                  For the District of New Jersey
                   D.C. Civ. No. 96-cv-00499



                     Submitted by the Clerk
                for a certificate of appealability
               pursuant to 28 U.S.C. § 2253(c)(1)
                        August 15, 1996

        Before: BECKER, ALITO and MCKEE, Circuit Judges.
                      (Motions Panel A)

           (Opinion Filed  October 18, 1996)


                              Ernesto Santana, # 15992-050
                              Ray Brook FCI
                              P.O. Box 905
                              Ray Brook, N.Y.  12977

                              Appellant Pro Se


                              Kevin McNulty, Esq.
                              U.S. Attorney's Office
                              970 Broad St.
                              Newark, New Jersey 07101

                              Counsel for Appellee

OPINION OF THE COURT

BECKER, Circuit Judge.

Ernesto Santana has asked this Court to grant a certificate of appealability for his challenge to the district court's denial of habeas corpus relief pursuant to 28 U.S.C. § 2255. As a preliminary matter, Santana's request requires us to determine whether the filing fee payment requirements of the Prison Litigation Reform Act of 1995 apply to in forma pauperishabeas corpus petitions and appeals. We conclude that they do not. Reaching the merits of the request, we find that Santana's petition is wholly without merit, hence the request for a certificate of appealability will be denied.

I.

Santana pled guilty in 1992 to one count of conspiracy to possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 841 & 846. The district court sentenced him to prison for the statutory minimum period of 120 months. In the present habeas petition filed pursuant to 28 U.S.C. § 2255, Santana claims that his counsel rendered constitutionally ineffective assistance by failing to object to an alleged miscalculation of a Sentencing Guideline range and by failing to correct the district court's alleged misconception of its ability to reduce his Guideline level. Santana asserts that but for counsel's errors his minimum sentence could have been as low as 87 months.

By Order entered April 12, 1996, the district court denied the request for a writ of habeas corpus. The district court concluded that, because the statutory minimum sentence associated with Santana's offense exceeded the Sentencing Guideline range asserted by Santana, the request for habeas relief lacked merit. Santana filed a timely notice of appeal, which, in light of the recent amendments to habeas corpus law, was construed as a request for a certificate of appealability. See 28 U.S.C. § 2253 (c)(1)(B).

II.

A.

Before examining the merits of Santana's request, we consider whether, in light of the Prison Litigation Reform Act ("PLRA"), Santana must pay the appellate docketing and filing fees of $105.00. On April 26, 1996, Congress enacted the PLRA as Title VII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. 104-134, 110 Stat. 1321 (1996). Section 804 of the PLRA, which amends 28 U.S.C. § 1915, redefines the rights and obligations of litigants who are granted in forma pauperis status. Prior to the passage of the PLRA,

imprisoned litigants who were granted leave to proceed in formapauperis could seek and easily obtain waivers of filing fees. The PLRA, however, requires prisoners proceeding in formapauperis who bring "civil actions" or appeals of "civil actions" to pay all filing fees. The PLRA also establishes an elaborate deferred payment schedule by which litigants may fulfill their filing fee obligations. If an imprisoned litigant's funds are insufficient to pay the full filing fee, the prisoner must pay an initial partial filing fee. Thereafter, the prisoner must make monthly payments to the court until the filing fee is paid in full.

In the present case, the district court granted Santana's motion to proceed in forma pauperis on appeal. Thus, if the PLRA is applicable to a habeas corpus action such as Santana's, then he must somehow pay filing and docketing fees of $105 in order to obtain judicial review of his petition for relief.

## B.

The PLRA applies to prisoners who bring a "civil action" or who appeal a judgment in a "civil action or proceeding." 28 U.S.C. § 1915(a)(2), (b). But the PLRA neither defines "civil action" for purposes of in forma pauperislitigants nor expressly excludes habeas corpus proceedings from its scope.

At first blush, the plain meaning of the PLRA appears to require petitioners for habeas relief to fulfill its filing fee obligations. Habeas corpus proceedings are technically civil actions. Ex Parte Tom Tong, 108 U.S. 556, 559 (1883). Not only do habeas petitions fit within the literal scope of the PLRA, but § 802(a) of the PLRA, which applies to "civil action[s] with respect to prison conditions," explicitly excludes habeas corpus proceedings from its scope. 18 U.S.C. § 3626. As a result, one could argue that, because Congress excluded habeas corpus petitions in one provision, it would have done so in the filing fee provision if it had intended. See, e.g., Van Doren v. Mazurkiewicz, 1996 WL 506627*1 (E.D. Pa.) (holding that the PLRA applies to habeas corpus proceedings); see also Green v. Nottingham, 90 F3d 415, 418 (10th Cir. 1996) (holding that "petitions for a writ of mandamus are included within the meaning of the term 'civil action'" for purposes of the PLRA).

We do not believe, however, that the meaning of the phrase "civil action" as used in the PLRA is plain. First, habeas corpus cases are, in effect, hybrid actions whose nature is not adequately captured by the phrase "civil action"; they are independent civil dispositions of completed criminal proceedings. James S. Liebman, 1 FEDERAL HABEAS CORPUS PRACTICE & PROCEDURE § 2.1, at 3 (1988). The "civil" label is attached to habeas proceedings in order to distinguish them from "criminal" proceedings, which are intended to punish and require various constitutional guarantees. Boudin v. Thomas, 732 F.2d 1107, 1112 (2d Cir. 1984); see also Ex parte Tom Tong, 108 U.S. at 559 (Habeas corpus review is a civil proceeding because "[p]roceedings to enforce civil rights are civil proceedings and proceedings for the punishment of crimes are criminal

proceedings."). In light of their hybrid nature, habeas proceedings are often determined to be outside the reach of the phrase "civil action." See, e.g., Schlanger v. Seamans, 401 U.S. 487, 490 n.4 (1971) (nationwide service of process under 28 U.S.C. § 1391(e) applicable in civil proceedings against United States employees and officers is not available in habeas corpus proceedings); Harris v. Nelson, 394 U.S. 286 (1969) (civil discovery rules do not automatically apply to habeas proceedings); Ewing v. Rodgers, 826 F.2d 967 (10th Cir. 1987) (a habeas corpus suit is not a "civil action" for purposes of an award of attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A)); Boudin, 732 F.2d 1107 (similar); Dillard v. Blackburn, 780 F.2d 509 (5th Cir. 1986) ("[H]abeas cases are not automatically subject to the rules governing civil actions."); see also Advisory Committee Note to Rule 11 of the Rules Governing § 2254 Cases (Federal Rules of Civil Procedure apply to habeas corpus proceedings only to the extent they are not inconsistent with the habeas rules).

Furthermore, the express exclusion of habeas proceedings found in § 802(a) of the PLRA does not require us to hold that habeas proceedings are "civil actions" for purposes of the PLRA. Section 802, which amends 18 U.S.C. § 3626, limits the power of the federal courts to issue orders of relief from prison conditions by requiring that a "prison release order" be issued by a panel of three judges. A "prison release order," defined as an order "that directs the release from or non admission of prisoners to a prison," § 3626(g)(4), contemplates relief akin to that provided by a writ of habeas corpus. Thus, whereas the phrase "civil action" used in the PLRA's provision regarding filing fees does not clearly encompass habeas proceedings, the text of § 802 does. As a result, in order to distinguish between prison release orders and habeas proceedings, Congress felt compelled to exclude expressly such proceedings from the scope of § 802.

Finally, the plain meaning interpretation of the PLRA is undermined by Congress's passage of the antiterrorism law proximate to its enactment of the PLRA. On April 24, 1996, two days before it passed the PLRA, Congress passed the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Aimed at curbing groundless litigation, the AEDPA imposes significant restrictions on the filing of second or successive petitions for habeas corpus relief. If Congress had wanted to reform the in forma pauperisstatus of habeas petitioners, it might have done so in the AEDPA; yet nothing in the AEDPA changes the filing fees attached to habeas petitions or a prisoner's obligation to pay those filing fees.

Because of the foregoing reasons, we believe that the phrase "civil action" as used in § 1915(b) lacks a plain meaning. We must therefore consider whether the phrase includes habeas corpus proceedings in this context. The two courts that have previously considered this issue agree that Congress did not intend to include habeas proceedings in the category of "civil action" for the purposes of § 1915(b). See Martin v. United States, 1996 WL 528816 (7th Cir.); Reyes v. Keane, 90 F.3d 676

(2d Cir. 1996). We concur with those Courts. In determining whether a statute governing "civil actions" applies to habeas corpus proceedings, we must examine its context. See In re Grand Jury Subpoena Duces Tecum Dated January 2, 1995 (Simels), 775 F.2d 499, 503 (2d Cir. 1985) ("The application of each statute or rule using the words `civil action' must be decided on the basis of its language, its history and its purpose."). In Reyes, 90 F.3d at 678, Judge Newman noted that nothing in the text or legislative history of the PLRA "indicate[s] that Congress has endeavored to make the filing fee payment requirements to apply to habeas corpus petitions [or appeals]." Rather, Congress enacted the PLRA primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Torts Claims Act, most of which concern prison conditions and many of which are routinely dismissed as legally frivolous. See H.R. CONF. REP. NO. 104–378, 104th Cong., 2d Sess. (1996) (The PLRA "limit[s] the remedies for prison condition lawsuits."); 141 CONG. REC. S14418 (daily ed. Sept. 27, 1995) (statement of Sen. Hatch) (The PLRA will limit frivolous "prison condition lawsuits," such as a prisoner who "sued demanding that he be issued Reebok ... instead of Converse" brand shoes.").

The text of the PLRA itself reflects this focus. Section 802 of the PLRA limits remedies in prison conditions cases. Section 803 restricts § 1983 actions by requiring prisoners to exhaust their administrative remedies prior to filing such claims. See 42 U.S.C. § 1997(e). Section 806 narrows the availability of relief under the Federal Tort Claims Act by prohibiting prisoners from bringing actions against the government for mental or emotional injury absent a showing of physical harm. See 28 U.S.C. § 1346(b). Relying upon the PLRA's purpose, the Second Circuit has noted that the PLRA applies to special proceedings like habeas corpus "if the ... claim is analogous to the typical suits brought under 42 U.S.C. § 1983 complaining about prison conditions." Reyes, 90 F.3d at 679 (quoting In re Paul Nagy, 89 F.3d 115, 117 (2nd Cir. 1993)). Although we do not suggest that the only civil actions to which the PLRA applies are prisoners' suits seeking relief from prison conditions, we agree with the Second Circuit that, where a claim is not analogous to such a suit, the PLRA should be applied with caution. See Reyes, 90 F.3d at 679 n.1.

Furthermore, when the PLRA is read as a whole, it is apparent that Congress did not intend for the statute to apply to habeas proceedings. The PLRA establishes an elaborate installment payment plan by which litigants may fulfill their filing fee obligations, yet does not increase the $5 filing fee for a habeas corpus petition. In comparison, the filing fee for a civil complaint is $120.00. 28 U.S.C. § 1914(a). Congress surely did not intend for the installment plan of the PLRA to apply to habeas corpus actions merely to assure deferred monthly payments of a $5.00 fee. See Reyes, 90 F.3d at 67. Furthermore, § 1915(g) limits a prisoner to three frivolous suits or appeals in a lifetime. To hold that the PLRA was applicable to habeas corpus actions would prohibit a prisoner who had filed three groundless civil suits from seeking habeas relief from unlawful

imprisonment.  As Judge Posner observes in Martin, 1996 WL 528816 *2, "[t]his result would be contrary to a long tradition of ready access of prisoners to federal habeas corpus."  This is a result that we cannot countenance.

For the foregoing reasons, we conclude that the filing fee payment requirements of the PLRA set forth in 28 U.S.C. § 1915(b) do not apply to habeas corpus petitions or to appeals from the denial of such petitions.  Henceforth, the Clerk of this Court and the clerks of all of the district courts in this Circuit shall not impose the financial requirements of the PLRA in forma pauperis habeas corpus cases or appeals brought under 28 U.S.C. §§ 2254 and 2255.

## III.

Turning to the substance of the request for a certificate of appealability, we find no basis for granting it. In his plea for habeas relief, Santana reproaches his counsel for failure to object to a miscalculation of his sentence, asserting that the Sentencing Guideline range for his offense requires a minimum sentence of only 87 months.  The crime to which Santana pled guilty, however, carries a mandatory statutory minimum sentence of 120 months.  21 U.S.C. §§ 846, 841 (b)(1)(A).  In a case such as this, where the statutory minimum sentence exceeds the defendant's guideline range, the court is required to impose the statutory minimum sentence.  U.S.S.G. § 5G1.1(c)(2); see alsoUnited States v. Melendez, 55 F.3d 130, 135 n.1 (3d Cir. 1995) ("Where a statutory minimum is above the Guideline range, it becomes the guideline sentence.") (internal quotation marks omitted), aff'd, 116 S. Ct. 2057 (1996).

We recognize that a statutory minimum sentence is not an absolute barrier to a lesser sentence:

Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

18 U.S.C. § 3553(e).  In Santana's case, however, the barrier remains inviolable.  A court is powerless to impose a sentence below a statutory minimum without a motion of the government; in this case, the prosecution made no such motion.  See Melendez, 55 F.3d at 134 ("Congress has authorized sentences below a statutory minimum only upon the prosecution's motion.").  Moreover, by his own admission, the only assistance that Santana provided the government related to his own involvement in the conspiracy, Memorandum of Law in Support of Petition at 6-7, not that of "another person who has committed an offense."  28 U.S.C. § 3553(e).  Thus, Santana cannot fault his counsel for failure to press the government to make such a motion.

Because the court was powerless to impose a sentence below the statutory minimum, Santana cannot show that his attorney's performance was objectively unreasonable as required by a claim for ineffective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 687-88 (1984).

IV.

For the foregoing reasons, we hold that the filing fee payment requirements of the PLRA set forth in 28 U.S.C. § 1915(b) do not apply to habeas corpus petitions or to appeals from the denial of such petitions.  Because we also find that Santana's claim of ineffective counsel is without merit, his request for a certificate of appealability will be denied.